United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Deanna Barash,

    Defendant.

                               /

Hon. Laurie J. Michelson

Case No. 21-cr-20228

# Plea Agreement

The United States of America and the defendant, Deanna Barash, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.    Count of Conviction**

The defendant will waive her right to an indictment and will plead guilty to Counts 1 of the Information. Count 1 charges the defendant with obstructing a federal grand jury investigation under 18 U.S.C. § 1503.

**2.     Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which she is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | 10 years |
|---|---|---|
|  | Fine: | $250,000 |
|  | Term of supervised release: | 3 years |

**3.     Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional bribery charges against the defendant for the conduct reflected in the factual basis.

**4.     Elements of Count of Conviction**

The elements of Count 1 are:

(1)   A proceeding was pending before a federal grand jury;

(2)   Defendant was aware of the proceeding;

(3)   Defendant influenced, obstructed, impeded, endeavored to influence, obstruct, impede the due administration of justice in that proceeding; and

(4) Defendant's act was done "corruptly," that is, knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

**5. Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

From 2014 until September 2017, the defendant, Deanna Barash, worked for the Northville, Michigan Public Schools (NPS) as an Assistant Superintendent.

In or around July 2017, Barash signed an agreement with Daniel Budzinski to provide services for Budzinski's company, Everest Studios Inc. d/b/a Purpose, Inc. or Purpose Prep. (Purpose purports to provide "Social-Emotional Learning" materials.) As part of this agreement, Barash agreed to provide help with content and marketing of Purpose's materials. Purpose agreed to pay Barash $3,500 for her "effort and help" from July 1, 2017 to August 15, 2017. In addition, Purpose agreed to pay Barash 20% of any profits resulting from her efforts after July 19, 2017.

On July 10, 2017, without obtaining the internal review and approval from NPS and without disclosing her relationship with Purpose, Barash signed an agreement (a Statement of Work) that committed NPS to obtain courses and/or materials from Purpose. More specifically, on August 11, 2017, without obtaining the approval from any NPS officials, Barash executed two Sales Order Forms / Contracts—one for $20,000 (Order Date July 28, 2017) and the other for $25,000 (Order Date August 11, 2017). Shortly thereafter, Barash directed and secured payment for these sales, i.e., had NPS pay $45,000 to Purpose. On August 15, 2017, Barash deposited two checks into her bank account from Everest Studios Inc. (or Purpose) for $1,500.00 and $5,000.00 respectively.

After Barash left NPS, NPS officials became aware of the contracts with Purpose and Barash's commitment to pay Purpose without receiving further NPS approvals. In a May 2018 letter, NPS officials made Barash aware that her conduct was unethical and possibly criminal, and they would alert law enforcement.

After learning this information from the NPS officials, Barash deleted certain emails from her private email account.

On May 23, 2019, federal law enforcement officials interviewed Barash about her relationship with Purpose and the contracts between NPS and Purpose. These officials made Barash and her attorney aware of the pending federal investigation, which included a federal grand jury investigation. During that interview, Barash explained that, after receiving the May 2018 letter from NPS, she "panicked" and intentionally deleted email messages from her personal account related to Purpose.

In a follow up interview on August 8, 2019, Barash retracted the statement that she panicked. Instead, she explained that she deleted the messages because she routinely deleted emails from her inbox and felt the matter "was over." In the interview, she then retracted that statement and admitted she had panicked, but claimed she deleted the messages because she was concerned about losing her job, license, and being "raked over the coals." Barash emphasized that she was not attempting to prevent law enforcement from accessing her emails. She agreed to take a polygraph examination on the subject.

On December 9, 2019, Barash was given a polygraph examination concerning her statements about deleting her emails, specifically

whether she deleted any emails for the purpose of obstructing a criminal investigation or to evade law enforcement detection. She failed the examination. Afterwards, Barash admitted that she deleted the emails because she was made aware that she was under investigation by law enforcement.

**6. Advice of Rights**

The defendant has read the Information, has discussed the charges and possible defenses with her attorney, and understands the crime charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

    F.    The right to testify or not to testify at trial, whichever the defendant chooses;

    G.    If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

    H.    The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

    I.    The right to compel the attendance of witnesses at trial.

**7.    Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry additional consequences under federal or state law. The defendant understands that, if she is not a United States citizen, her conviction here may require her to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of her conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant

understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but

not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way; denying her guilt on the offense to which she is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions do not apply to the defendant's guideline calculation on Count 1: USSG § 3B1.3 and USSG § 3C1.1.

The parties have no other recommendations as to the defendant's guideline calculation.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraph 5. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraph 5. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that Court impose a sentence that is not greater than the bottom of the guideline range as determined by the Court.

#### 2. No Right to Withdraw

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C. Supervised Release

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a two-year term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

There is no recommendation or agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on

restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### G. Special Assessment

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

## 10. Appeal Waiver

The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of the guideline range determined by the Court, the defendant also waives any right she may have to appeal her sentence on any grounds.

## 11. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he[she] may have to challenge her conviction or sentence on any grounds under

28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**12. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw her guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13. Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any

statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14. Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15. Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions

against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**16. Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 PM EST on March 31, 2021. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Saima S. Mohsin
Acting United States Attorney

David A. Gardey
Chief, Public Corruption Unit
Assistant United States
Attorney

Steven P. Cares
Assistant United States
Attorney

Dated: 3/16/2021

By signing below, the defendant and her attorney agree that the defendant has read or been read this entire document, has discussed it with her attorney, and has had a full and complete opportunity to confer with her attorney. The defendant further agrees that she understands this entire document, agrees to its terms, has had all of her questions answered by her attorney, and is satisfied with her attorney's advice and representation.

_____
David Nacht
Attorney for Defendant

_____
Deanna Barash
Defendant

Dated: